# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**VICTORIA A. E.,**

      **Plaintiff,**

      **vs.**                                        **CIV NO. 1:24-cv-01237-KRS**

**FRANK BISIGNANO,**
**Commissioner of Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Victoria A. E.'s ("Plaintiff") Motion for Reversal and Remand to the Social Security Administration ("Motion"), (Doc. 14), dated May 7, 2025, challenging the determination of the Commissioner of the Social Security Administration ("SSA" or the "Commissioner") that Plaintiff is not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Plaintiff's Motion on July 31, 2025, (Doc. 20), and Plaintiff filed a reply on August 14, 2025, (Doc. 21). Plaintiff filed a Notice of Completion of Briefing that same day. (Doc. 22). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in her decision and will therefore **GRANT** Plaintiff's Motion and **REMAND** this case back to the SSA for proceedings consistent with this opinion.

## I.      PROCEDURAL POSTURE

On February 12, 2022, Plaintiff filed an initial application for DIB with an alleged onset

date of May 30, 2014, at 33 years of age. (*See* Administrative Record ("AR") at 17, 72-73, 217).[1]

Plaintiff alleged she was disabled due to cervical spine strain, left wrist tendinitis, tinnitus, major depressive disorder (recurrent), left ankle post arthroscopy synovectomy, left knee strain, traumatic brain injury ("TBI"), right ankle lateral malleolus fracture post-ORIF, lumbar strain with old avulsion of L5, and bilateral plantar fasciitis with right calcaneal spur. (*Id.* at 72-74, 271-72, 287). In Plaintiff's May 1, 2022, Adult Function Report, she reported that her purported conditions affected her to the extent that she could not care for her children or pets, she needed assistance with grooming, reminders to take medication, and her spouse prepared all meals. (*Id.* at 308-09). She further reported that she could grocery shop in stores but preferred to do deliveries due to her anxiety, was "anti-social," and her conditions affected her memory, concentration, completing tasks, understanding, following instructions, and getting along with others. (*Id.* at 310-12). Plaintiff also claimed she was "not very good" or "not good at all" with respect to following and understanding written and spoken instructions, getting along with authority figures, and handling stress and changes in routine. (*Id.* at 312-13). Plaintiff's date last insured, the date through which she could be eligible to receive DIB was March 31, 2019. (*Id.* at 72).

Plaintiff's application was denied at the initial level on July 8, 2022, (*id.* at 17, 73-78), and upon reconsideration on January 16, 2023, (*id.* at 17, 79-87, 95-99). Plaintiff requested a hearing on March 16, 2023, (*id.* at 100-02), which ALJ Michelle Lindsay ("ALJ Lindsay" or the "ALJ") conducted on April 18, 2024, (*id.* at 17, 41-71, 176-78, 180-84). Plaintiff was represented by counsel and testified at the hearing (*id.* at 41-42, 49-66 ), as did Vocational Expert Kathleen Doehla ("VE") (*id.* at 41-42, 66-70). On August 19, 2024, the ALJ issued an unfavorable decision. (AR

---

[1] Document 9 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

14-40). On October 9, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* 1–6). On December 9, 2024, Plaintiff filed her Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.   LEGAL STANDARDS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss

every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B.    Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    THE ALJ'S DETERMINATION

On August 19, 2024, ALJ Lindsay issued a decision denying Plaintiff's application for DIB. (AR 14-40). In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. (*Id.* at 19-33). First, ALJ Lindsay found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her alleged onset date of May 30, 2014. (*Id.* at 20).

At step two of the sequential evaluation, the ALJ found Plaintiff had a moderate limitation in all four "paragraph B" areas: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (AR at 21). With regard to understanding, remembering, or applying information, ALJ Lindsay stated Plaintiff's medical records reflected "normal mental state" where she was "alert and oriented." (*Id.* at 21 (citing 1F/14, 49, 53, 68, 118, 140, 190, 194, 225, 266, 280, 349, 362, 405, 422; 2F/22, 4, 52, 60, 135, 160, 172, 181, 205, 218, 235, 287, 296, 391, 414, 422, 449, 458)). Plaintiff's intellect was "average." (*Id.* at 21 (citing 1F/194)). Plaintiff also obtained a bachelor's degree and a master's degree during the relevant period. (*Id.* at 21). The ALJ speculated that level of education required "good reading comprehension . . . concentration . . . and . . . assess[ing] the most important ideas." (*Id.*) It further demanded skills in organization, comprehension, and analyzation. (*Id.*)

In communicating with others, ALJ Lindsay found records establishing Plaintiff "appeared depressed," anxious, frustrated, and distracted. (*Id.* at 21 (citing 1F/50, 190, 422; 2F/52, 60, 160, 219, 282, 307, 385, 387, 455, 463, 489, 557, 637)). Plaintiff also presented with "moderate to severe symptoms of depression." (*Id.* at 22 (citing 1F/243)). Plaintiff, however, was "well groomed, appropriately dressed, . . . appropriate eye contact," cooperative, and normal and clear speech. (*Id.* (citing 1F/15, 27, 44, 50-51, 61, 88, 95, 107, 122, 194, 214, 227, 255,265, 280; 2F/38, 52, 60, 78-79, 130, 135, 151, 162, 168, 173, 181, 184, 195-96, 218, 235, 239, 264, 282, 286, 296, 300, 323, 346, 365, 390-91, 404, 414, 487, 501, 604, 626, 677, 692, 713, 736, 761)).

As for concentrating, persisting, or maintain pace, the ALJ again found Plaintiff's intellect to be "average" and relied upon the surmised skills necessary to obtain bachelor's and master's degrees. (*Id.* at 22).

With respect to adapting or managing oneself, ALJ Lindsay determined Plaintiff "appeared

depressed," anxious, frustrated, and distracted per the medical evidence. (*Id.* (citing 1F/50, 190, 194, 422; 2F/52, 60, 160, 219, 282, 307, 385, 387, 455, 463, 489, 557, 637)). Plaintiff also reported "moderate to severe symptoms of depression." (*Id.* (citing 1F/243)). Nevertheless, Plaintiff stated she could independently manage self-care, some medical notes found she had normal attention and was not distracted. (*Id.* (citing 1F/58, 127, 180, 272; 2F/130, 675, 692, 711, 744, 749, 762, 772)).

Accordingly, ALJ Lindsay found Plaintiff suffered from the following severe mental impairments:[2] TBI with cognitive impairment, depressive disorder, anxiety disorder, [and] attention deficit hyperactivity disorder." (*Id.* at 20). She also concluded Plaintiff had a non-severe impairment: tension headaches. (*Id.*) As a result, ALJ Lindsay stated that the paragraph B criteria was not satisfied because Plaintiff's mental impairments did "not cause at least two 'marked' limitations or one 'extreme' limitation." (*Id.* at 22). The ALJ also acknowledged "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment," and noted "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (*Id.* at 22-23). Because she concluded that Plaintiff did not have a mental impairment or combination of mental impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the RFC to:

> Perform light work as defined in 20 CFR 404.1567(b) except that she is able to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, sit for at least six hours in an eight-hour workday, and stand and walk for six hours in an eight-hour workday. She can occasionally climb stairs, ramps, ladders, ropes, and scaffolds. She can frequently balance, stoop, crouch, kneel, and crawl. She must avoid more than occasional exposure to extreme cold. She must avoid more than occasional exposure to pulmonary irritants such as fumes, odors, dust, gasses, and poor ventilation. <u>The claimant is able to understand, remember, and carry out detailed but not complex instructions. She is able to maintain attention and concentration to perform and persist at detailed but not complex tasks at a consistent pace for two hours at a time without requiring redirection to task. She cannot perform rapid assembly-line paced work. She can have occasional interactions with</u>

---

[2] Plaintiff's appeal is limited to the ALJ's conclusion as to her mental impairments. Hence, the Court does not address the ALJ's findings as to Plaintiff's physical impairments.

<u>the general public and with co-workers and supervisors. She requires work involving no more than occasional change in the routine work setting</u>.

(*Id.* at 23) (emphasis added).

In formulating the RFC, the ALJ related that Plaintiff stated in medical exams and during the reconsideration level that, "[s]he says that her mental health is always declining; she is on Prozac and does not feel like she needs a higher dosage; she is very depressed and has lots of anxiety especially with this whole denial." (AR at 24, 80). ALJ Lindsay noted Plaintiff "has [TBI] with cognitive impairment (2F/181, 216), depressive disorder (1F/4; 2F/239; 6F/13; 9F/4), anxiety disorder (2F/239, 257; 5F/83; 9F/4), [and] attention deficit hyperactivity disorder (2F/353, 447)." (*Id.* at 24). Plaintiff also reported an extensive history of medical treatment for her mental impairments, including individual and group therapy and different medications without side effects. (*Id.*) ALJ Lindsay recounted Plaintiff's medical records that demonstrated normal mental state as well as records demonstrating the varying symptoms and depressed and anxious mental states Plaintiff reported in her DIB application. (*Id.*)

At the disability hearing, Plaintiff testified that she was able to obtain her online degrees because she was accommodated an additional week for tests, homework, and papers. (*Id.* at 31). She also stated that she could not leave her house and interact with people due to her depression. (*Id.*) Plaintiff reported being irritable and "clouded judgment all the time." (*Id.*) Plaintiff's wife and mother helped daily with Plaintiff's two kids, cooking, and cleaning. (*Id.* at 31-32). Plaintiff also testified that she felt "drained" and needed to rest if she took her kids to the park. (*Id.*) She further attempted to avoid social interaction and large groups by getting her groceries delivered. (*Id.* at 31).

ALJ Lindsay found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence

and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 24-27). The ALJ first noted that Plaintiff reported improved moods with medications, but felt stable when off of medications while receiving therapy. (*Id.* at 24). In 2019, Plaintiff reported that her anxiety was not affecting her everyday life and she did not want to restart medication. (*Id.*) Notably, she also stated that she only discontinued her medications due to her pregnancy. (*Id.*) ALJ Lindsay again recounted Plaintiff's normal mental state findings. (*Id.* at 24-25). And, although Plaintiff stated she struggled with concentration and motivation, she obtained bachelor's and master's degrees during the relevant period. (*Id.* at 25).

ALJ Lindsay also noted that that neurologist Austin Randall Moody II, M.D., ("Dr. Moody"), found Plaintiff had "mild memory loss per her own complaints without objective findings on testing."(*Id.* at 28). Plaintiff's judgment was mildly impaired for complex or unfamiliar decisions; unable to identify, understand, and weigh alternatives, consequences, and make reasonable decisions. (*Id.*) Plaintiff's visual spatial orientation was mildly impaired impacting he ability to follow directions. (*Id.*) Dr. Moody found "no residual conditions attributable to TBI that" affected Plaintiff's ability to work. (*Id.*) He also confirmed presence of overlapping symptoms of TBI and PSTD. (*Id.*) The ALJ found Dr. Moody's opinion and findings persuasive as to Plaintiff's TBI. (*Id.* at 29). Dr. Moody, however, only indicated "mild impairments in most areas related to TBI." (*Id.*) Notably, ALJ Lindsay also found Levon Clark, PA-C's ("Clark") opinions and findings as to Plaintiff's physical problems and TBI persuasive, but did not include any further information as to Clark's opinion and findings. (*Id.*)

She also addressed Lori Willinghurst, M.D.'s, ("Dr. Willinghurst"), examination of Plaintiff's TBI. (*Id.* at 29). ALJ Lindsay found Dr. Willinghurst's opinion not persuasive because her statement that Plaintiff had "occupational and social impairment with reduced reliability and

productivity," was not supported by the medical evidence, was inconsistent with Dr. Willinghurst's own findings, and was a vague conclusion. (*Id.* at 29-30). According to the ALJ, Dr. Willinghurst's objective testing "showed mild impairment with memory, attention, concentration, or executive function." (*Id.* at 29). Further, Dr. Willinghurst found "no subjective symptoms and no mental, physical or neurological conditions or residuals attributable to TBI." (*Id.*) As such, "the examiner finds behavioral effects that do not interfere with workplace interaction or social interaction." (*Id.*) ALJ Lindsay noted Plaintiff was "vague about details," "mood was depressed and anxious," and "presented psychomotor retardation or stimulation." (*Id.*) Nevertheless, Plaintiff's [s]peech was fluent, of normal rate, rhythm, volume . . . thought process was linear and goal directed . . . . Affect had full range with limited mood congruence . . . [and] no obsessions or compulsions." (*Id.*) Dr. Willinghurst concluded Plaintiff was "not a good historian, which could indicate underlying cognitive deficit." (*Id.* at 30). ALJ Lindsay found there were some contradictions as Plaintiff had "earned a master's degree . . . but could not properly draw the hands on a clock" and her MOCA score of 19/30 was inconsistent with someone of higher education. (*Id.*) Dr. Willinghurst found Plaintiff had "additional mental health disorder of major depressive disorder." (*Id.*) Of note, Dr. Willinghurst and the ALJ could not substantiate Plaintiff's statement that she received an accommodation at school for her TBI. (*Id.*) The ALJ also commented that Plaintiff was a stay-at-home-mom who had completed an online master's degree—activities that contradict Plaintiff's alleged symptoms. (*Id.*) As a result, ALJ Lindsay found Dr. Willinghurst's opinion and findings as to Plaintiff's mental impairment unpersuasive. (*Id.*)

ALJ Lindsay likewise determined Plaintiff's daily activities were not limited to the extent one would expect given Plaintiff's complaints of severe mental conditions. (*Id.* at 31-32). The ALJ referenced Plaintiff's online degree programs, that she drove a car, Plaintiff exercised by walking,

and spent time with family and friends. (*Id.* at 32). In May 2024, Plaintiff stated her physical activities included riding a Peloton bike three times a week, coaching kids' sports teams, swimming lessons, and walking about 60 minutes daily. (*Id.* at 32).

Next, the ALJ found Plaintiff did not have past relevant work. (*Id.*) At step five, to determine the extent to which Plaintiff's mental limitations eroded "the unskilled light occupational base," the ALJ asked the VE if any occupations exist which could be performed by an individual with the same "age, education, work experience, and [RFC]" as Plaintiff. (*Id.* at 33). The VE testified that, considering those factors, an individual could perform the requirements of the following light, SVP 2 occupations: mail clerk cleaner, office helper, and inspector. (*Id.*) The ALJ then determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Accordingly, Plaintiff was deemed not disabled at any time from May 30, 2014, through the date last insured, March 31, 2019. (*Id.*)

## IV.    THE PARTIES' ARGUMENTS

Plaintiff argues that ALJ Lindsay's unfavorable decision should be reversed and remanded due to two errors with sub-arguments. First, Plaintiff claims the ALJ's RFC assessment is legally insufficient because it does not adequately account for the effect of Plaintiff's moderate mental limitations in all four "paragraph B" areas: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself, and such error was not harmless.[3] (Doc. 14 at 9-14). Plaintiff also contends that the connections between her moderate limitations in each of the four areas of functioning to the RFC are not obvious and, as such, the ALJ was required to provide a more thorough explanation in crafting the RFC. (*Id.* at 12-13). In particular, the ALJ found Plaintiff had moderate limitations in

---

[3] Plaintiff's appeal does not dispute the ALJ's finding that the aforementioned limitations did not rise to the level of meeting or equaling a Listing. *See generally* (Doc. 14); *see also* (AR at 22).

11

understanding, remembering or applying information, and concentrating, persisting or maintaining pace, but concluded Plaintiff could conduct semiskilled work in those functioning categories. (*Id.*) This finding, according to Plaintiff, conflicts with this Court's holding in *Montoya v. O'Malley*, No. 1:23-cv-00036-LF, 2024 U.S. Dist. LEXIS 58403, 2024 WL 1329436, (D.N.M. Mar. 28, 2024), wherein the Court found the ALJ failed to connect unskilled work activity to Plaintiff's mental limitations. (*Id.* at 13). Although not fully developed, Plaintiff argues that the ALJ's assessment did not account for the possibility that Plaintiff's mental impairments—in particular her severe depressive symptoms—waxed and waned.[4] (*Id.* at 11-12). Second, ALJ Lindsay's finding that Dr. Willinghurst's opinion was unpersuasive is not supported by substantial evidence. (*Id.* at 14-19). Further, the ALJ improperly dismissed Dr. Willinghurst's opinion because she relied upon speculation, credibility judgments, or lay opinion in formulating her finding. (*Id.*)

The Commissioner counters that ALJ Lindsay's RFC appropriately accounts for Plaintiff's moderate limitations. In support of his position, the Commissioner first argues the Tenth Circuit does not require a workplace limitation simply because a judge finds a moderate impairment in social functioning. (Doc. 20 at 6-7). Next, the Commissioner contends that the ALJ properly accounted for Plaintiff's "moderate limitations by limiting [Plaintiff] to particular kinds of work activity." (*Id.* at 7 (citing *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016); *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015)). Specifically, ALJ Lindsay limited the four mental functioning categories as follows: (1) understand, remember, or apply information: detailed but not complex instructions, (*id.* at 7 (citing AR at 23)); (2) interact with others: occasional interaction

---

[4] Plaintiff failed to develop the argument that the ALJ did not properly assess Plaintiff's waxing and waning of her depressive symptoms. Hence, the Court finds Plaintiff waived this argument on appeal. *See Wall*, 561 F.3d at 1065 (an issue is waived if not adequately supported by "developed argumentation"); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those . . . contentions that have been adequately briefed for our review.").

with coworkers, supervisors, and the public, (*id.*); (3) concentrate, persist, or maintain pace: detailed but not complex tasks at a consistent pace for two hours at a time without requiring redirection to task, and no rapid assembly-line paced work, (*id.*); and (4) adapt or manage oneself: no more than occasional changes in routine work setting, (*id.*). Third, the ALJ was not required to assess whether Plaintiff possessed a moderate limitation for each enumerated activity under the four broad functional categories. (*Id.* at 8). Finally, the Commissioner argues Plaintiff's assertions are no more than speculation and are unsupported by substantial evidence in the record. (*Id.* at 9). Notably, the Commissioner does not challenge Plaintiff's argument that ALJ Lindsay's assessment that Plaintiff is capable of "detailed but not complex" tasks and instructions equates to semiskilled work. *See generally* (Doc. 20).

## V.   DISCUSSION

The Court finds that remand is required because the ALJ failed to follow the correct legal standards when assessing Plaintiff's moderate mental limitations in connection with the RFC and this error was not harmless. The Court declines to address Plaintiff's remaining objections because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnh*art, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

As the Court addressed above, ALJ Lindsay found at step three that Plaintiff is moderately limited in all four mental functioning categories. The ALJ's conclusions were based on Plaintiff's medical records which reflected a "normal mental state" at times, moderate to severe symptoms of depression as well as anxious mood, and Plaintiff appeared frustrated and distracted during medical examinations. (AR at 21-22). Plaintiff's medical records also indicated she was well groomed, cooperative, and had normal and clear speech that supported her ability to communicate

13

with others. (*Id.*) She further found Plaintiff's intellect was "average" and surmised she possessed skills to obtain bachelor's and master's degrees that were necessary for understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (*Id.*) As for adapting or managing oneself, ALJ Lindsey determined Plaintiff's medical records evidenced that she appeared depressed, anxious, frustrated, and distracted and she reported moderate to severe symptoms of depression. Plaintiff, however, independently managed self-care. (*Id.* at 22).

In the mental RFC assessment, ALJ Lindsay found Plaintiff could conduct the following categories of work: (1) understand, remember, and carry out detailed but not complex instructions; (2) maintain attention and concentration to perform and persist at detailed but not complex tasks at a consistent pace for two hours at a time without requiring redirection to task. She cannot perform rapid assembly-line paced work; (3) have occasional interactions with the general public and with co-workers and supervisors; and (4) requires work involving no more than occasional change in the routine work setting. (*Id.* at 23). Plaintiff contends, and the Commissioner does not dispute, that the ALJ's limitation to "detailed but not complex" instructions and tasks is synonymous to semiskilled work. (Doc. 14 at 12-13); *see generally* (Doc. 20).

### A.    The Scope of the RFC Assessment and Moderate Mental Limitations

Plaintiff first argues that a limitation to semiskilled work fails to adequately account for her moderate mental limitations in the RFC assessment. (Doc. 14 at 9-14). The Commissioner, citing several Tenth Circuit cases, first asserts that it is well-established that a moderate limitation at step three does not automatically require work-related functional limitation in the RFC assessment at step four. (Doc. 20 at 6 (citing *Vigil*, 805 F.3d at 1203)).

The Commissioner is correct that the Tenth Circuit has disagreed with the proposition that the ALJ necessarily *must* incorporate limitations at step three into the RFC at step four. *See Beasley*

*v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). In *Beasley*, the Court concluded that the ALJ "was under no obligation to include limitations in [the claimant's] social functioning" in the RFC "based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis," *id.*, and declined to issue a `ruling "requiring an ALJ's RFC assessment to mirror his step three-findings." *Id.* at n.3. As noted by the *Beasley* Court, the step-two and -three determinations of mental impairments "are not an RFC assessment but are [instead] used to rate the severity of mental impairment(s)." SSR 96-8P, 1996 SSR LEXIS 5 at *13, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." *Id.*

But Tenth Circuit case law does not support a categorical rule that an ALJ need not take step three limitations into account when determining a claimant's RFC. While "the ALJ's description of the mental limitations at steps two and three is not an RFC assessment . . . that does not mean that an ALJ may stop there." *Willie v. Saul*, No. 19-cv-00329 SMV, 2020 U.S. Dist. LEXIS 75188, 2020 WL 2065286, at *4 (D.N.M. Apr. 29, 2020) (citation omitted). Rather, having assessed certain mental limitations at steps two and three, the ALJ is "required either to include corresponding limitations in the RFC assessment or to explain the omission." *See, e.g.*, *Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014) ("[T]he ALJ's failure to address concentration, persistence, and pace in his RFC analysis is puzzling given that at step three, he assessed [the claimant] with moderate limitations in this area. . . . Nor does the decision otherwise explain why he did not include in the RFC any limitations in concentration, persistence, and pace."); *Miranda v. Barnhart*, 205 F. App'x 638, 643 (10th Cir. 2005) ("Given that he found moderate difficulties

15

in the areas of concentration, persistence, or pace, the ALJ erred in not further addressing these factors in assessing [the claimant's] RFC.") (footnote omitted); *Vialpando v. Colvin*, No. 14-cv-01956-LTB, 2015 U.S. Dist. LEXIS 167554, 2015 WL 8755063, at *8 (D. Colo. Dec. 15, 2015) ("While an ALJ may not be required to incorporate a finding of moderate limitations at step three into the RFC assessment in all cases, I conclude that the circumstances of this case . . . mandate that the ALJ at least explain why he chose not to incorporate the moderate difficulties he found Plaintiff had with regard to concentration into his assessment of her RFC.").

Indeed, in *Crowder*, the Tenth Circuit remanded the case to the ALJ for further consideration, directing that "[i]f the ALJ again chooses to assess moderate impairments in concentration, persistence, and pace at step three, but not to include any limitation on concentration, persistence, and pace in the RFC at step four, he should explain the basis for his decision." *Crowder*, 561 F. App'x at 746 (emphasis added). And the Tenth Circuit's directive in *Crowder* is not undermined by its subsequent decision in *Beasley*. In *Beasley*, the ALJ had expressly concluded in his decision that despite his finding that the claimant had limitations in social functioning, she could nevertheless "respond appropriately to supervision, co-workers, the general public, and usual work situations," thus adequately explaining his decision to not include social-functioning limitations in the claimant's RFC. *Beasley*, 520 F. App'x at 754.

Accordingly, although the Commissioner's statement that an ALJ's finding at step three "does not necessary translate to a work-related functional limitation" in the RFC, might technically be correct, it is incomplete. While the ALJ need not automatically adopt step three findings in the RFC assessment, if the ALJ chooses to not incorporate the step three determinations into the RFC, the ALJ must explain the basis for this decision. *Willie*, 2020 WL 2065286, at *4; *Crowder*, 561 F. App'x at 746.

16

B.      **The ALJ's RFC Assessment Fails to Adequately Account for Moderate Mental Limitations**

1.      *Semiskilled Work and Moderate Mental Limitations*

The Commissioner argues next that the ALJ "match[ed] every finding of a moderate limitation at step three to a corresponding RFC restriction." (*Id.* at 7). In support, he contends ALJ Lindsay limited Plaintiff to "non-complex work" (*i.e.*, semiskilled work) and/or included multiple corresponding work restrictions. (*Id.*) For instance, the ALJ concluded Plaintiff's work activity for understanding, remembering, or applying information "was restricted to detailed but not complex instructions." (*Id.*) She also limited Plaintiff's work activity for maintaining concentration, persistence, or pace to non-complex tasks and not fast paced work. (*Id.*) The Court finds the Commissioner's copy-and-paste of the RFC misses the crux of Plaintiff's objections. Simply put, Plaintiff contends it is not obvious how the RFC's limitation to semiskilled work or other work activities accommodates Plaintiff's moderate mental impairments. The Court agrees with Plaintiff.

The Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker v. Comm'r*, 772 F. App'x 613, 616, 922 F.3d 1169 (10th Cir. 2019) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."). Indeed, a "claimant's functional ability is distinct from the skill level required to perform a particular job." *Valdez v. Saul*, No. 17-cv-02610-PAB, 2020 U.S. Dist. LEXIS 95266, 2020 WL 2832372, at *4 (D. Colo. June 1, 2020). "Because [an individual's] response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A

17

claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 SSR LEXIS 20 at *16, 1985 WL 56857, at *6 (SSA 1985). Thus, an ALJ generally must account for moderate limitations "with precision in the ultimate determination of the claimant's residual functional capacity," and must express the claimant's moderate impairments in mental functioning "in terms of work-related functions" or "work-related activities." *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016) (emphasis added) (quotation and alteration marks omitted) (citing *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014)). Only if "the connection (between the limitation and the work) is obvious" may an ALJ "account for mental limitations by limiting the claimant to particular kinds of work." *Parker*, 772 F. App'x at 616 (emphasis added).

"[A] case-by-case analysis is required to determine whether an RFC's limitations adequately account for all impairments found by the ALJ and supported by the record." *Marquez-Hernandez v. Comm'r*, No. 17-cv-01513-MSK, 2018 U.S. Dist. LEXIS 86154, 2018 WL 2328401, at *7 (D. Colo. May 22, 2018). Relevant here, the four functioning categories assessed at step three are as follows:

- **Understanding, remembering, or applying information** "refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing 12.00(E)(1). Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. *Id.*

18

- **Interacting with others** "refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing 12.00(E)(2). Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. *Id.*

- **Concentrating, persisting, or maintaining pace** "refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate." 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing 12.00(E)(3). Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. *Id.*

- **Adapting or managing oneself** "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing 12.00(E)(4). Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals;

19

> making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *Id.*

A moderate limitation in a certain area of mental functioning means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, subpt. P, app. 1 Listing 12.00(F)(2)(c). A moderate impairment "is not the same as no impairment at all," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), and it "must be accounted for in an RFC finding." *Jaramillo*, 576 F. App'x at 876.

Here, the Court respectfully finds that the limitation to performing semiskilled work does not obviously incorporate Plaintiff's specific moderate limitations in the four aforementioned functioning categories. As Plaintiff notes, semiskilled work,

> may require *alertness and close attention* to watching machine processes; or *inspecting, testing, or otherwise looking for irregularities*; or tending or guarding equipment, property, material, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, *but more complex than unskilled work*. A job may be classified as semiskilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568(b) (emphasis added). Functional abilities needed for any job include understanding, carrying out, and remembering simple instructions—these are basic work activities. *See* 20 C.F.R. § 404.1522(a), (b)(3); SSR 96-9p, 1996 WL 374185, at *9. ALJ Lindsay, however, determined Plaintiff suffered from severe impairments that would significantly limit Plaintiff's ability to do basic work activities. (AR at 20). Nevertheless, in ascertaining the RFC limitations the ALJ concluded Plaintiff was limited to work activities that were semiskilled—work that is more complex than unskilled work, *i.e.*, more complex than basic work activities. Because the connection between the moderate limitations and the assignment of semiskilled tasks and

20

instructions is not obvious, *Parker*, 772 F. App'x at 616, the mere limitation to semiskilled work is insufficient, alone, to account for Plaintiff's moderate limitations. *See e.g., Edgell v. Kijakazi*, No. CV 21-269 KK, 2022 U.S. Dist. LEXIS 100316, 2022 WL 1987846, at *2 (D.N.M. June 6, 2022) (concluding that the connection between "simple tasks for two hours at a time without requiring redirection to task" and the claimant's "impaired ability to complete a normal workday and workweek without interruptions . . . and perform at a consistent pace without an unreasonable number and length of rest periods [was] not clear.").

Furthermore, the ALJ also did not adequately connect *how* Plaintiff's moderate mental limitations in her ability to concentrate, persist, and maintain pace affected her ability to work. In the RFC, ALJ Lindsay found Plaintiff could complete semiskilled "tasks at a consistent pace for two hours at a time without requiring redirection." (AR at 23). This, however, is not a real limitation because the basic work activity for any job includes maintaining concentration and attention for two hour periods. *See* Social Security Administration Program Operations Manual System ("POMS")[5] DI 24583.005(B)(2)(a) (stating that one of the "Mental Abilities Needed for Any Job" is "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)); *see also* SSR 96-9P, 1996 WL 374185, at *6 (July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."). Therefore, ALJ Lindsay's "limitation" does not accommodate Plaintiff's moderate impairment in her ability to concentrate, persist, and

---

[5] "The POMS is 'a set of policies issued by the Administration to be used in processing claims.'" *Warren*, 170 F. Supp. 3d at 1364 n.7 (quoting *McNamar v. Apfel*, 172 F. 3d 764, 766 (10th Cir. 1999)). "The court 'defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Id.* (quoting *Ramey v. Reinertson*, 268 F.3d 955, 964 n. 2 (10th Cir. 2001) (alteration marks in original)).

maintain pace. Nor does the ALJ's narrative discussion, which focuses on Plaintiff's ability to perform daily activities such as independently managing self-care, driving, obtaining advance educational degrees with an accommodation, and spending time with family and friends, adequately explain how someone who is severely limited in her ability to concentrate, persist, and maintain pace would be able to work essentially a normal workday.

The RFC also limits Plaintiff's interactions with others to "occasional interaction with the general public and with co-workers and supervisors." (AR at 23). "Occasional interaction" with the public, supervisors, and co-workers means that Plaintiff can interact with these individuals "up to one-third of the time." *See* SSR 83-10, 1983 SSR LEXIS 30 at *13, 1983 WL 31251, at *5 (Jan. 1, 1983). Again, the ALJ's RFC assessment fails to adequately connect Plaintiff's fair ability to interact independently, appropriately, and effectively with others on a sustained basis that the ALJ found Plaintiff to have at step three with the work activity in the RFC—interacting with others "up to one-third of the time." Indeed, at step three ALJ Lindsay deduced that Plaintiff "appeared depressed," anxious, frustrated, and distracted, and presented with "moderate to severe symptoms of depression." (AR at 21-22). The RFC assessment cites similar findings. What is absent from the ALJ's decision is an explanation as to how limiting Plaintiff to "occasional interaction" accommodates the symptoms of her severe medical impairments. Remand on this basis is thus warranted absent a connection between the moderate limitations and the work activity of "occasional interaction."

Likewise, the Court finds the ALJ's assessment fails to connect Plaintiff's moderate mental limitations in her ability to adapt or manage oneself with the work limitations in the RFC. A moderate limitation in the ability to adapt or manage oneself "supports the conclusion that the individual's capacity to perform the activity is impaired." *Warren*, 170 F. Supp. 3d at 1364

(quoting POMS) DI § 24510.063(B)(2)). Here, ALJ Lindsay restricted Plaintiff to work involving no more than occasional changes in routine work setting. (AR at 23). Plaintiff directs this Court to its prior holding in *Montoya*, 2024 U.S. Dist. LEXIS 58403. (Doc. 14 at 13).

In *Montoya*, United States Magistrate Judge Laura Fashing found the ALJ failed to make an obvious connection between the plaintiff's moderate limitation in adapting and managing oneself and the limitation to simple and repetitive work. *Montoya*, 2024 U.S. Dist. LEXIS 58403, at *17. In particular, "the ALJ did not explain how a limitation to unskilled work would accommodate any of Ms. Montoya's symptoms resulting from anxiety." *Id.* at *15. Similarly, ALJ Lindsay's assessment does not explain how a limitation to semiskilled work—as Plaintiff contends—accommodates a limitation in Plaintiff's ability to adapt or manage herself. Moreover, the ALJ did not explain how a limitation to semiskilled or even unskilled work would accommodate any of Plaintiff's severe mental impairments. And, as noted in *Montoya*, district courts within this Circuit have concluded that an ALJ's failure to explain or connect simple or unskilled work to moderate limitations in adapting or managing oneself warrants remand. *See id.* at *16-17 (citing collected cases). It follows that remand is also warranted for the ALJ's failure to connect semiskilled work to moderate limitations in the RFC.

### 2.    *Simple or Unskilled Work and Moderate Mental Limitations*

Finally, assuming*, arguendo*, ALJ Lindsay ascertained an RFC limited to unskilled work, instead of semiskilled work, the RFC assessment still failed to make an obvious connection between the moderate limitations at step three and the work limitations in step four. As addressed previously, the Commissioner cites *Vigil*, *Bales*, and *Beasley* for the contention that moderate limitations do not require workplace limitations. *See* (Doc. 20 at 6-7). The Court finds *Vigil*, *Bales*, and *Beasley* are distinguishable.

In *Vigil*, the Court found that an RFC limited to unskilled work adequately accounted for the claimant's moderate memory and concentration deficits because the ALJ had determined, at step four, that the claimant "retained enough memory and concentration to perform simple tasks," a limitation commensurate with the demands of unskilled work. *Vigil*, 805 F.3d at 1203-04. Specifically, in his RFC findings, the ALJ acknowledged that the claimant had a moderate limitation in the category of concentration, persistence, and pace at step three. *Id.* at 1203. He then found that this limitation manifested specifically in impaired delayed recall, inability to spell in reverse, and an inability to recall the President's name. *Id.* He thus concluded that the claimant could not perform complex tasks, but evidence showed the claimant could perform simple tasks. *Id.* at 1203-04. This limitation was equivalent to one of the requirements of unskilled work, so the ALJ was able to account for the claimant's mental impairments by limiting him to unskilled work. *Id.* at 1204.

Likewise, in *Bales v. Colvin*, 576 F. App'x 792 (10th Cir. 2014), and *Beasley*, 520 F. App'x 748, the ALJs similarly qualified the moderate limitations identified at step three, thereby justifying the inclusion of only narrower limitations in their RFC assessments. *See Bales*, 576 F. App'x at 797 (finding no error in the ALJ's RFC assessment where the ALJ accepted, at step three, that the claimant was moderately limited in concentration, persistence, or pace but found that she could "sustain focused attention sufficiently long to permit timely and appropriate completion of tasks commonly found in work settings"); *Beasley*, 520 F. App'x at 754 (finding that the ALJ was not required to incorporate general limitations in social functioning into the RFC where "the ALJ found that, in spite of any limitations in social functioning, [the claimant] could respond appropriately to supervision, co-workers, the general public, and usual work situations") (internal quotation marks omitted)).

In sum, the aforementioned cases "depended on the existence of additional analysis narrowing or qualifying the moderate functional limitations identified at step three such that there was no inconsistency between the step three findings and the RFC ultimately assessed." *See Valdez*, 2020 U.S. Dist. LEXIS 95266, at *11-12 (citing *Marquez-Hernandez*, 2018 WL 2328401, at *6 (distinguishing *Vigil* and *Bales* on a similar ground)). By contrast, ALJ Lindsay never explained how limiting Plaintiff to unskilled or simple work would account for Plaintiff's moderate mental limitations. *See* (AR at 23-32). The ALJs in *Vigil*, *Bales*, and *Beasley* made a "more obvious" connection between the claimants' mental limitations and the restriction in the RFC "to certain types of work." *Montoya*, 2024 U.S. Dist. LEXIS 58403, at *16.

### C.    The Error Was Not Harmless

The Administration's legal error, in the context of appeals under 42 U.S.C. § 405(g), is harmless when the Court can confidently determine that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter any other way. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). The Court cannot find ALJ Lindsay's error harmless. Had she adequately considered the effect of moderate limitations on Plaintiff's four functioning categories and the precise ways in which her mental limitations might affect her in the workplace, ALJ Lindsay may have found that Plaintiff could not meet any of the limitations to perform work at any skill level. This would have required ALJ Lindsay to find Plaintiff disabled. The Court thus remands the case for rehearing and reconsideration.

## VI.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Victoria A. E.'s Motion for Reversal and Remand to the Social Security Administration, (Doc. 14), is **GRANTED**. **IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and this

matter is **REMANDED** for further proceedings consistent with this Memorandum Opinion and

Order.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE